UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

THELMA BARONE,                                          Civil No. 6:15-cv-1552-AA

                Plaintiff,                        OPINION AND ORDER

      v.

CITY OF SPRINGFIELD, a municipal
corporation; TIM DONEY, individually,
and as Chief of Police of the Springfield
Police Department; TOM RAPPÉ,
individually, and as a Lieutenant of the
Springfield Police Department; GINO
GRIMALDI, individually, and as City
Manager of the City of Springfield; and
GRETA UTECHT, individually, as
Director of Human Resources for the
City of Springfield,

                Defendants.

_____

Andrew Lewinter, Attorney, P.C.
101 E. Broadway, Suite 220
Eugene, OR 97401
        Attorney for Plaintiff

Steven A. Kraemer
Leslie A. Edenhofer
Kraemer & Edenhofer
P.O. Box 1469
Lake Oswego, OR 97035
        Attorneys for Defendants

1    -   OPINION AND ORDER

AIKEN, Judge:

Plaintiff filed suit against the City of Springfield (the City) and several employees of the City and the Springfield Police Department (the Department). Plaintiff alleges that defendants violated her First Amendment rights under 42 U.S.C. § 1983 by retaliating against her and also by requiring her to relinquish her right of free speech to maintain her employment. Plaintiff moves for partial summary judgment on her Second Claim for Relief pursuant to Federal Rule of Civil Procedure 56. The motion is denied.

## I. BACKGROUND

On March 24, 2003, the Department hired plaintiff as a Community Service Officer II. Plaintiff was assigned as a victim advocate and multicultural liaison.

Beginning in the spring of 2013, plaintiff began receiving calls from members of the Latino community complaining about racial profiling by members of the Department. In response, plaintiff informed Department leadership of her concerns regarding police officer interactions with the Latino community. The Department maintains it investigated at least three formal complaints during 2013 and 2014 involving race or ethnicity as an alleged factor. In contrast, plaintiff alleges that the Department leadership denied any racial profiling problems existed and dismissed such complaints throughout 2013 and 2014.

In 2014, the Department began an internal investigation into two incidents involving plaintiff. Sgt. Rappé conducted the investigation, interviewed plaintiff, and in January 2014 prepared a written report of his findings.

On February 5, 2015, plaintiff spoke at a City Club of Springfield event. Plaintiff alleges that she was asked whether she knew of complaints of racial profiling, and she responded that she had heard of such complaints.

On February 12, 2015, Chief Doney informed plaintiff that the Department was placing her on administrative leave pursuant to the 2014 investigation. He provided plaintiff with a memorandum entitled "Allegation of Misconduct Investigation" and formally notified her that she was subject to investigation for untruthfulness. During the investigation, plaintiff was suspended from duty with pay.

On March 4, 2015, Chief Doney prepared a memorandum informing plaintiff of the initial results of the investigation and the tentative finding that plaintiff had violated several sections of Springfield Police Department (SPD) General Order 26.1.1, Code of Conduct. Plaintiff's alleged violations included: 1) unbecoming conduct, 2) unsatisfactory performance, and 3) knowingly making an inaccurate, false or improper report. Chief Doney informed plaintiff that the allegations were sufficient to justify termination for cause.

During the following months, the Department continued the investigation. On July 15, 2015, Chief Doney informed plaintiff that the misconduct warranted a four-week suspension without pay combined with a Last Chance Agreement. Plaintiff alleges that she was disciplined in retaliation for speaking about racial profiling on February 5, 2015.

On August 3, 2015, plaintiff returned to work as a Community Safety Officer. Plaintiff contends that she was prohibited from engaging in any multicultural liaison activities and was essentially demoted. Defendants maintain that even though her assignment changed, plaintiff was not demoted, and her rank, pay, and benefits did not change.

On the day of her return, Chief Doney met with plaintiff and her union representative, Erik Pardee, and provided both with a copy of the Last Chance Agreement (Agreement). Chief Doney advised plaintiff and Pardee to review the Agreement with their attorneys. Plaintiff

alleges that Chief Doney stated that if she failed to sign the Agreement or failed to comply with its terms, the Department would terminate her.

On August 10, 2015, plaintiff informed Chief Doney that she would not sign the Agreement because she did not agree with the investigation results or with the subsequent discipline. Plaintiff also expressed concern that the Agreement's provisions would prohibit her from raising complaints regarding racial profiling and discrimination.

On August 12, 2015, Chief Doney provided plaintiff and Pardee with a new version of the Agreement, with changes made to address plaintiff's concerns. Specifically, Paragraph 5(g) of the Agreement stated: "Consistent with SPD General Order 26.1.1.XIX, Employee will not speak or write anything of a disparaging or negative manner related to the Department/Organizational/City of Springfield or its Employees. Employee is not prohibited from bringing forward complaints she reasonably believes involve discrimination or profiling by the Department." Barone Decl. Ex. A at 2. General Order 26.1.1.XIX provides that Department members "shall not publicly criticize or ridicule the Department, its policies, or other members....[and] shall conscientiously avoid the release of any confidential information or information that compromises any investigation." Doney Decl. Ex. 10 at 6.

Chief Doney asked plaintiff if she was prepared to sign the Agreement, and plaintiff stated that she needed more time to think about it. After speaking with Mr. Pardee, plaintiff told Chief Doney that she would not sign the Agreement. Chief Doney told plaintiff that she would be terminated if she did not sign. Plaintiff confirmed that she understood and still refused to sign. Chief Doney then informed plaintiff that she was terminated.

On August 17, 2015, plaintiff filed suit. She alleges that defendants violated her free speech rights pursuant to a 42 U.S.C. § 1983 by retaliating against her for her exercise of free

speech and by requiring her to relinquish her right to free speech to keep her job. Plaintiff now seeks partial summary judgment on her second claim for relief.

## II. STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. When evaluating summary judgment motions, the court must construe all inferences drawn from the evidence in the light most favorable to the nonmoving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

## III. DISCUSSION

Plaintiff argues that defendants violated her First Amendment rights by requiring her to relinquish her free speech rights in order to maintain her employment. Essentially, plaintiff argues that the Agreement constituted an improper prior restraint on protected speech.

It is well established that a governmental entity "cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick v. Myers*, 461 U.S. 138, 142 (1983). It is also well established that a governmental entity, such as the City, "has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). When evaluating a prior restraint claim against a public employer, the court first assesses whether the employee's

speech was protected by the First Amendment; only then does the court determine whether the public employer can demonstrate that its legitimate interests outweigh the employee's First Amendment rights. *Gibson v. Office of Atty. Gen., State of Cal.*, 561 F.3d 920, 927 (9th Cir. 2009). To establish "protected speech activities," plaintiff must show that she "(1) spoke on a matter of public concern; and (2) spoke as a private citizen and not within the scope of her official duties as a public employee." *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1068 (9th Cir. 2012).

Significantly, plaintiff did not sign the Agreement and suffered no adverse employment action based on speech allegedly in violation of the Agreement. Thus, plaintiff must establish that the Agreement - on its face - restrains speech protected by the First Amendment.

Under Paragraph 5(g) of the Agreement, plaintiff could not "speak or write anything of a disparaging or negative manner related to the Department/Organizational/City of Springfield or its Employees" in accordance with SPD General Order 26.1.1.XIX. Barone Ex. A at 2. In turn, General Order 26.1.1.XIX provides that Department members "shall not publicly criticize or ridicule the Department, its policies, or other member" and "shall conscientiously avoid the release of any confidential information or information that compromises any investigation." Doney Decl. Ex. 10 at 6. In other words, the Agreement requires plaintiff to abide by SPD General Order 26.1.1.XIX, which is distributed to all Department members, and not publicly criticize or disparage the Department. Doney Decl. ¶14. Plaintiff seemingly argues that because the Agreement forbids criticism of the City or the Department, it necessarily would have prohibited plaintiff from speaking on matters of public concern in her capacity as a private citizen. I disagree.

Notably, criticism of a governmental entity does not necessarily implicate matters of public concern. "Speech involves a matter of public concern when it can fairly be considered to relate to 'any matter of political, social, or other concern to the community.'" *Johnson v. Multnomah Cnty.*, 48 F.3d 420, 422 (9th Cir. 1995) (quoting *Connick*, 461 U.S. at 146). However, "speech that deals with 'individual personnel disputes and grievances' and that would be of 'no relevance to the public's evaluation of the performance of governmental agencies' is generally not of 'public concern.'" *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003) (quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983)). Accordingly, if the Agreement applied to plaintiff's personal grievances with the Department, it would not prohibit protected speech. *Coszalter*, 320 F.3d at 973.

Likewise, if the Agreement applied to plaintiff's speech in her capacity as a public employee, it would not prohibit protected speech. *Karl,* 678 F.3d at 1068. Public employees do not receive First Amendment protection when they make statements pursuant to their "official duties." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). "[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick*, 461 U.S. at 147.

The face of the Agreement does not differentiate between personal criticisms of the Department or those involving matters of public concern. To the extent plaintiff argues that the Agreement would have prohibited her from raising concerns about racial profiling, the Department modified the Agreement to accommodate her concern. In an August 10, 2015 email to the Department, plaintiff explained, "I am afraid that by signing this agreement I will agree

not to speak up if people bring complaints to us regarding police profiling, discrimination, etc."
Barone Decl. Ex. B at 1. In response, the Department specifically acknowledged plaintiff's
concerns and added the sentence, "Employee is not prohibited from bringing forward complaints
she reasonably believes involve discrimination or profiling by the Department." *Id.* Ex. A at 2.
Thus, the face of the Agreement does not prohibit plaintiff from raising her concerns of racial
profiling, either in a public or private capacity.[1]

Further, the context of the alleged prior restraint is an employment agreement,
presumably dictating plaintiff's responsibilities as a public employee rather than as a private
citizen. The Agreement does not indicate whether it was intended to extend to plaintiff's private
speech, and defendants contend that it was not. Doney Decl. ¶ 14. Consequently, construing the
Agreement and the facts in favor of defendants, I cannot find that the Agreement necessarily
prohibits speech protected by the First Amendment.

## CONCLUSION

Plaintiff's motion for partial summary judgment (doc. 23) is DENIED. The parties shall
contact Paul Bruch, Courtroom Deputy for Magistrate Judge Coffin, at 541-431-4111 to schedule
a judicial settlement conference.

IT IS SO ORDERED.

Dated this ⟨25th⟩ day of May, 2016.

_____
Ann Aiken
United States District Judge

---

[1] Regardless, such concerns raised pursuant to plaintiff's official duties would not be
protected by the First Amendment. *Garcetti*, 547 U.S. at 421.

8    -    OPINION AND ORDER