IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

THELMA BARONE,

Plaintiff,

v.

CITY OF SPRINGFIELD, a municipal
corporation; TIM DONEY, individually
and as Chief of Police of the Springfield
Police Department; TOM RAPPÉ,
individually and as a Lieutenant of the
Springfield Police Department; and
GRETA UTECHT, individually and
as Director of Human Resources for
the City of Springfield,

Defendants.

Case No. 6:15-cv-01552-AA

OPINION AND ORDER

AIKEN, Judge:

Plaintiff, Thelma Barone, filed suit against the City of Springfield (the City) and several employees of the City and the Springfield Police Department (the Department) on August 17, 2015. Plaintiff alleges that defendants violated her First Amendment rights under 42 U.S.C. § 1983 by: (1) retaliating against her for speaking out about complaints of police racial profiling;

and (2) requiring her to relinquish her right of free speech to maintain her employment, constituting an unconstitutional prior restraint. Doc. 1; Doc. 56. On May 25, 2016, this Court denied plaintiff's Motion for Partial Summary Judgment on her second claim for relief. Doc. 42. On October 13, defendants filed the instant Motion for Summary Judgment on both claims. Defs.' Mot. Summ. J. at 1. For the following reasons, defendants' motion is granted and plaintiff's second Motion for Partial Summary Judgment (doc. 50) is denied.

## BACKGROUND

On March 24, 2003, the Department hired plaintiff as a Community Service Officer II. Plaintiff was assigned as a victim advocate and multicultural liaison. Beginning in the spring of 2013, plaintiff began receiving calls from members of the Latino community complaining about racial profiling by members of the Department. In response, plaintiff informed Department leadership of her concerns regarding police officer interactions with the Latino community. The Department maintains it investigated at least three formal complaints involving race or ethnicity during 2013 and 2014. In contrast, plaintiff alleges that the Department leadership denied any racial profiling problems existed and dismissed such complaints throughout 2013 and 2014.

In 2014, the Department investigated two incidents of untrustworthiness involving plaintiff. The first incident occurred on June 28, 2014, when plaintiff led a school tour to visit five different Department units. Barone Decl. ¶ 12; Doney Decl. ¶ 8, Ex. 4, at 1. During the tour, some students took photos of restricted areas. Plaintiff claims that either she or her fellow tour guide asked permission to photograph each unit and that each unit granted permission. Barone Decl. ¶ 13. Some unit employees do not remember whether they were asked or granted permission. Rappé Dep. 32:17–33:18.

The second incident occurred on September 2, 2014, and involved plaintiff's report of a potential domestic violence crime. Plaintiff was the only member of the Department with information about the crime. She left a message with dispatchers asking Sgt. Boring to call her back. Plaintiff recalled that she had described the allegations of violence in the message. Barone Decl. ¶¶ 15–16. Sgt. Boring and the dispatchers, by contrast, asserted that plaintiff merely requested a call back and did not explain that she was calling about a potential crime. Doney Decl. Ex. 3, at 4–6. When confronted with a recording of the call showing plaintiff had merely requested a call back without mentioning the serious nature of the message, plaintiff refused to admit her mistake, instead asking whether the recording had been altered. Doney Decl. Ex. 3, at 5–6. Sgt. Rappé investigated both incidents, interviewed plaintiff, and in January 2015, prepared a written report of his findings.

On February 5, 2015, plaintiff spoke at a City Club of Springfield event. Plaintiff alleges that she was asked whether she knew of complaints of racial profiling, and she responded that she had heard of such complaints.

On February 12, 2015, Chief Doney informed plaintiff that the Department was placing her on administrative leave pursuant to the 2014 investigation. He provided plaintiff with a memorandum entitled "Allegation of Misconduct Investigation" and formally notified her that she was subject to an investigation for untruthfulness. During the investigation, plaintiff was suspended from duty with pay.

On March 4, 2015, Chief Doney prepared a memorandum informing plaintiff of the initial results of the investigation and the tentative finding that plaintiff had violated several sections of the Department's code of conduct. Plaintiff's alleged violations included: (1)

3 – OPINION AND ORDER

unbecoming conduct; (2) unsatisfactory performance; and (3) knowingly making an inaccurate, false, or improper report. Chief Doney informed plaintiff that the allegations were sufficient to justify termination for cause.

During the following months, the Department continued the investigation. On July 15, 2015, Chief Doney informed plaintiff that she would be suspended for four weeks without pay and required her to sign a Last Chance Agreement (Agreement). Two weeks of the suspension were to be completed at the end of July 2015, and the other two weeks would be deferred to an unspecified date within the following six months. Plaintiff alleges this disciplinary action was retaliation for speaking about racial profiling on February 5, 2015 at the City of Springfield event.

On August 3, 2015, plaintiff returned to work as a Community Safety Officer. Plaintiff contends that she was prohibited from engaging in any multicultural liaison activities in her new assignment and was essentially demoted. Defendants maintain that even though her assignment changed, plaintiff was neither demoted in her rank or pay, nor did her benefits change.

On the day of her return, Chief Doney met with plaintiff and her union representative, Erik Pardee, and provided both with a copy of the Agreement. Chief Doney advised plaintiff and Pardee to review the Agreement with their attorneys. Plaintiff alleges that Chief Doney stated that if she failed to sign the Agreement or failed to comply with its terms, the Department would terminate her.

On August 10, 2015, plaintiff informed Chief Doney, in an e-mail, that she would not sign the Agreement because she did not agree with the investigation results or with the subsequent discipline. Plaintiff also expressed concern that the Agreement's provisions would

4 – OPINION AND ORDER

prohibit her from raising complaints regarding racial profiling and discrimination. Plaintiff explained, "I am afraid that by signing this agreement I will agree not to speak up if people bring complaints to us regarding police profiling, discrimination, etc." Barone Decl. Exs. E & G.

In response, on August 12, 2015, Chief Doney provided plaintiff and Pardee with a new version of the Agreement with changes made to address plaintiff's concerns. Specifically, Paragraph 5(g) of the Agreement stated: "Consistent with [the Department] General Order 26.1.1.XIX, Employee will not speak or write anything of a disparaging or negative manner related to the Department/Organization/City of Springfield or its Employees. Employee is not prohibited from bringing forward complaints she reasonably believes involve discrimination or profiling by the Department." Doney Decl. Exs. 9 & 11; Barone Decl. Ex. A, at 2. General Order 26.1.1.XIX provides that Department members "shall not publicly criticize or ridicule the Department, its policies, or other members . . . [and] shall conscientiously avoid the release of any confidential information or information that compromises any investigation." Doney Decl. Ex. 10, at 6.

Chief Doney asked plaintiff if she was prepared to sign the Agreement, and plaintiff stated that she needed more time to think about it. After speaking with Pardee, plaintiff told Chief Doney that she would not sign the Agreement. Chief Doney told plaintiff that she would be terminated if she did not sign. Doney Decl. ¶¶ 5–6. Plaintiff confirmed that she understood and still refused to sign. Chief Doney then informed plaintiff that she was terminated. *Id.*

On August 17, 2015, plaintiff filed suit. She alleges that defendants violated her First Amendment rights pursuant to 42 U.S.C. § 1983 by retaliating against her for her exercise of free speech and by requiring her to relinquish her right to free speech to keep her job, amounting to

5 – OPINION AND ORDER

an unconstitutional prior restraint on her right to free speech. Defendants now move for summary judgment.

## STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is not genuinely in dispute unless a reasonable jury could decide it in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324. When evaluating summary judgment motions, the court must construe all inferences drawn from the evidence in the light most favorable to the nonmoving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Although the court's role is not to weigh or assess the credibility of the evidence, the nonmoving party must present more than a mere scintilla of proof. *Anderson*, 477 U.S. at 252.

## DISCUSSION

### I.   Claim 1: Retaliation

Plaintiff argues that defendants terminated her employment in retaliation for responding to public questions about police misconduct. Pl.'s Compl. ¶ 1. Defendants argue that plaintiff's retaliation claim fails because any alleged protected speech was made in plaintiff's capacity as a public employee, plaintiff's discharge was unrelated to any protected speech, and plaintiff cannot prove the statements were the cause of her termination. Defs.' Mot. Summ. J. 13–15, 18–20.

Government employees do not relinquish their First Amendment rights to comment on matters of public interest. *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cnty., Ill.*, 391 U.S. 563, 568. However, the government may place some limitations on public employees' speech due to its special "interests as an employer." *Id.* Courts employ a balancing test for weighing the employee's rights against the government employer's interest in promoting efficiency and effectiveness in the delivery of public services via its employees. *Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 (9th Cir. 2013) (quoting *Pickering*, 391 U.S. at 568). The Ninth Circuit distilled the test for a retaliation claim into a five-step inquiry: (1) whether plaintiff spoke on a matter of public, rather than private, concern; (2) whether plaintiff spoke as a private citizen or public employee; (3) whether plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the government employer had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the employer would have taken the adverse employment action even absent the protected speech. *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009) (citing *Pickering*, 391 U.S. at 568–69). A plaintiff bears the initial burden of proving the first three steps. Once she has made that showing, the burden shifts to the employer defendant to show either that the administrative interests justified curtailing the employee's speech or that the employer would have reached the same conclusion even in the absence of the employee's protected speech. *Id.* at 1070–71. A "failure to meet any one of [the steps] is fatal to [a] plaintiff's case." *Dahlia* 735 F.3d at 1067, n. 4.

With regard to the first step in a retaliation claim inquiry, speech involves a matter of public, rather than private, concern when it relates to a political, social, or other matter of concern to the community. *Johnson v. Multnomah Cnty., Or.*, 48 F.3d 420, 422 (9th Cir.1995);

*Connick*, 461 U.S. at 147. Reporting police abuse and misconduct "is quintessentially a matter of public concern." *Dahlia*, 735 F.3d at 1067 (citing *Connick*, 461 U.S. at 147).

With regard to the second step in the inquiry, plaintiff bears the burden of showing the speech was spoken in her capacity as a private citizen and not as a public employee. *Eng*, 552 F.3d at 1070. The First Amendment does not protect employee speech when that speech is "'pursuant to . . . official duties . . . .'" *Id.* at 1068 (quoting *Garcetti v. Ceballos* 574 U.S. 419, 424–25 (1951)). What constitutes an "official duty" is a practical, fact specific inquiry, rather than a rigid, definitional one. *Id.* Because formal job descriptions "often bear little resemblance to the duties an employee actually is expected to perform," the listing of a given task is instructive, but not dispositive, for determining whether that tasks falls within the scope of the employee's official duties for First Amendment purposes. *Id.* at 1069. In addition to analyzing whether the speech is related to an official duty, courts also look to other factors including the subject of the communication, whether the employee made her statement or expressed concern to someone outside of the work place, and whether the employee spoke in direct contravention to a supervisor's orders. *Id.* at 1074–75.

With regard to the third step in the inquiry, plaintiff bears the burden of showing the employer "took adverse employment action . . . [and that the] speech was a 'substantial or motivating' factor in the adverse action." *Freitag v. Ayers*, 468 F.3d 528, 543 (9th Cir. 2006). Adverse employment action for purposes of a retaliation claim need not be as severe as termination; it need only chill exercise of protected speech. *Dahlia*, 735 F.3d at 1078 ( holding that placement on administrative leave is sufficient to constitute an adverse action). Whether the speech was a substantial motivating factor in the termination is a question of fact and absent direct evidence that the employee was terminated because of protected speech, a plaintiff must

8 – OPINION AND ORDER

rely on circumstantial evidence. For example, there may be a genuine issue of material fact regarding causation if the summary judgment record includes evidence of: (a) employer opposition to speech; (b) a pre-textual basis for the adverse action; or (c) temporal proximity between the speech and the adverse action. *See Keyser v. Sacramento City Unified Sch. Dist.,* 265, F.3d 741, 750–52 (9th Cir. 2001).

Employer opposition to allegedly protected speech may include a written memorandum detailing the employer's opposition, *Schwartzman v. Valenzuela,* 846 F.2d 1209, 1212 (9th Cir. 1988), or an oral warning expressly disapproving of speech, *see Allen v. Scribner,* 812 F.2d 426, 434–35 (9th Cir. 1987). Additionally, if an employer offers reasonable, non-discriminatory rationale for an adverse employment action, the employee must offer evidence that the proffered rationales are pretextual. *Keyser,* 265, F.3d at 752; *see e.g., Schwartzman,* 846 F.2d at 1212 (holding that there was a question of fact for the jury where the plaintiff introduced evidence that he worked at a hospital for eight years with no behavior complaints, and it was not until after he publically criticized hospital procedures that his employer found his conduct to be unsatisfactory). Finally, a court may infer causation from temporal proximity when the time between allegedly protected speech and adverse employee action is "very close." *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001) (holding that twenty months suggested no causal link and favorably citing a three and four-month period as too long to infer causation); *see also Williams v. Tucson Unified Sch. Dist.,* 316 Fed. Appx. 563, 564 (9th Cir. 2008) (holding that nine months was too long to infer causation).

Here, plaintiff has met her burden at step one by establishing that her allegedly protected speech is a matter of public concern because it involves reporting on police misconduct. *Dahlia,* 735 F.3d at 1067.

9 – OPINION AND ORDER

Plaintiff, however, failed to meet her burden at the second step because she has not demonstrated that her speech was made as a private citizen. Plaintiff first identities the public speaking event at the City Club of Springfield as an incident of protected speech. Pl.'s Compl. ¶ 24. However, plaintiff appeared in uniform at the event and was specifically asked in her capacity as a Community Safety Officer and multicultural liaison to answer public questions on behalf of her employer. Defs.' Mot. Summ. J. 15–16 (citing Barone Dep. 189:23–191:4); *see also Freitag*, 486 F.3d at 544. Plaintiff also identifies her reports to supervisors of incidents of racial discrimination and tensions with minority communities as protected speech. Pl.'s Compl. ¶ 24. However, it is clear from the record that these reports were part of plaintiff's job duties. Barone Decl. ¶¶ 1-7; Doney Decl. Ex. 1 at 1-10. Though not listed in her official job description, the fact that plaintiff acted as a multicultural liaison to the Latino community was a well-known and well-documented feature of her job. Doney Decl. Ex. 1 at 1-10; *see also Garcetti*, 574 U.S. at 424–25. Starting in 2003, plaintiff reported to her supervisors the tensions between police and minority communities as part of her day-to-day job activities. Doney Decl. Ex. 1 at 1-10; *Garcetti*, 574 U.S. at 424–25. Although concerns about corruption or systemic abuse would typically be outside of the purview of an average employee's responsibilities, plaintiff's normal job duties involved investigating or reporting such conduct, and she was encouraged, not dissuaded, from reporting. *See Dahlia*, 735 F.3d at 1075; *see also Hagen v. City of Eugene*, 736 F.3d 1251, 1258–59 (9th Cir. 2013) (In a police station, where employees were required to report unsafe practices of fellow employees, repeatedly bringing up bad policing to supervisors did not constitute protected speech.). As such, plaintiff's speech was made pursuant to her official duties in her public capacity. Her retaliation claim therefore fails at the second step of the analysis.

As stated above, a "failure to meet any one of [the steps] is fatal to [a] plaintiff's case." *Dahlia* 735 F.3d at 1067, n. 4. Accordingly, defendants' Motion for Summary Judgment on the retaliation claim is granted.

## II. Claim 2: Prior Restraint

Plaintiff argues that defendants violated her First Amendment rights by requiring her to sign the Agreement because the Agreement constituted an improper prior restraint on protected speech. Pl.'s Compl. ¶ 1. This Court previously denied plaintiff's Motion for Partial Summary Judgment on this specific claim after determining that the Agreement did not, on its face, restrain plaintiff's free speech. Doc. 42 at *1. That decision is now the law of the case and plaintiff's prior restraint claim cannot be revisited absent an exception. *See Minidoka Irrigation Dist. v. Dep't of Interior of U.S.*, 406 F.3d 567, 573 (9th Cir. 2005).

To reiterate this Court's earlier decision, there is an overlap in analysis between what a plaintiff must prove to state a retaliation claim and a claim for prior restraint. When evaluating a prior restraint claim against a public employer, the Court first assesses whether the plaintiff's speech was protected by the First Amendment. *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1068 (9th Cir. 2012). Only then does the Court determine whether the public employer can demonstrate that its legitimate interests outweigh the employee's First Amendment rights. *Gibson v. Office of Atty. Gen., State of Cal.*, 561 F.3d 920, 927 (9th Cir. 2009). To establish "protected speech activities," a plaintiff must show that she: "(1) spoke on a matter of public concern; and (2) spoke as a private citizen and not within the scope of her official duties as a public employee." *Karl*, 678 F.3d at 1068. A governmental entity "cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick*, 461 U.S. at 142. However, as discussed above, it is well

11 – OPINION AND ORDER

established that a governmental entity "has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Pickering*, 391 U.S. at 568.

As this Court previously determined, plaintiff did not sign the Agreement and suffered no adverse employment action based on speech allegedly in violation of the Agreement. Thus, plaintiff bore the burden of establishing that the Agreement – on its face – restrained speech protected by the First Amendment. Doc. 42 at *3–4. Under Paragraph 5(g) of the Agreement, plaintiff could not "speak or write anything of a disparaging or negative manner related to the Department/Organizational/City of Springfield or its Employees" in accordance with Department General Order 26.1.1.XIX. In turn, General Order 26.1.1.XIX provides that Department members "shall not publicly criticize or ridicule the Department, its policies, or other member[s]" and "shall conscientiously avoid the release of any confidential information or information that compromises any investigation." In other words, the Agreement requires plaintiff to abide by the Department General Order 26.1.1.XIX, which is distributed to all Department members, by not publicly criticizing or disparaging the Department.

This Court rejected plaintiff's argument that because the Agreement forbids criticism of the City or the Department, it necessarily would have prohibited her from speaking on matters of public concern in her capacity as a private citizen. The face of the Agreement does not differentiate between personal criticisms of the Department or those involving matters of public concern. While matters involving police misconduct are clearly matters of public concern, to the extent plaintiff argues that the Agreement would have prohibited her from raising concerns about racial profiling, the Department modified the Agreement to accommodate her concern with explicit permission to bring forward such complaints, inserting the following language:

12 – OPINION AND ORDER

"employee is not prohibited from bringing forward complaints she reasonably believes involve discrimination or profiling by the Department." Doney Decl. Exs. 9 & 11; Barone Decl. Ex. A, at 2. Thus, the face of the Agreement does not prohibit plaintiff from raising her concerns of racial profiling, either in a public or private capacity.[1] Further, the context of the alleged prior restraint is an employment agreement, dictating plaintiff's responsibilities as a public employee rather than as a private citizen. The Agreement does not indicate whether it extended to plaintiff's private speech, and defendants contend that it did not.

As mentioned above, under the "law of the case" doctrine, a court may not reexamine a previously-decided issue in the same case. *Minidoka Irrigation Dist.*, 406 F.3d at 573. However, there are three exceptions to the prohibition that may warrant reexamination: "'(1) a decision is clearly erroneous and its enforcement would work a manifest injustice; (2) intervening controlling authority makes reconsideration appropriate; or (3) substantially different evidence was adduced'" during subsequent proceedings. *Id.* (quoting *Old Person v. Brown*, 312 F.3d 1036, 1039 (9th Cir. 2002)).

The first two exceptions are not relevant to this case, as plaintiff only invokes the third exception in urging this Court to revisit whether the Agreement constituted an improper prior restraint. Plaintiff argues that that the deposition of Chief Doney provides substantial new evidence that the Agreement was intended to chill plaintiff's private speech. (Doc. 50). Specifically, plaintiff cites letters members of the public wrote to the Department after she was placed on administrative leave. In his deposition, Chief Doney expressed concern that plaintiff was publicly agitating for support. Plaintiff argues that testimony is evidence of intent to chill

---

[1] Regardless, such concerns raised pursuant to plaintiff's official duties would not be protected by the First Amendment. *Garcetti*, 547 U.S. at 421.

13 – OPINION AND ORDER

protected speech. However, as discussed above, the inclusion of the 5(g) provision was consistent with existing general policy of the Department prohibiting public disparagement of the employer and forbidding the release of confidential internal information. Further, the modification to allow for explicit report of discrimination contradicts plaintiff's argument that signing of the Agreement would prohibit the type of speech plaintiff must report as part of her official duties. Thus, plaintiff fails to show that Chief Doney's deposition presents the Court with substantially different evidence to warrant reexamination of this Court's earlier decision. Accordingly, defendants' Motion for Summary Judgment on the prior restraint claim is granted and plaintiff's Motion for Partial Summary Judgment is denied.

### III. *Monell* Liability

In addition to the reasons stated above, the City of Springfield is entitled to summary judgment because there is insufficient evidence to support a claim for municipal liability.

Under a *Monell* theory of municipal liability, local governments are "persons" for purposes of § 1983 actions and may be held liable if the municipality subjects an individual to a deprivation of rights or causes that individual "to be subjected to" a deprivation of rights. *Monell v. Dept. of Soc. Sec. of City of N.Y.*, 436 U.S. 658, 691–92 (1978). A plaintiff must show that: (1) the City acted under color of law; and (2) this caused a constitutional violation by an official policy or custom. *Tsao v. Desert Palance, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012). Official policies or customs include decisions by lawmakers, acts of policy makers, and "practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *e.g.*, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)). Conversely, a custom does not exist where an alleged practice lasted for a few months or related

to only one employee. *Christie v. Iopa*, 175 F.3d 1231, 1235 (9th Cir. 1999); *see also Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Absent an official policy or custom, a plaintiff must allege a violation based on a de facto or official decision maker. *Id.*; *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84 (1986). The decision maker must possess final authority to establish municipal policy "with respect to the action ordered." *Id.* at 481–82; *see also Weinstein v. City of Eugene*, 2007 WL 2238204 at *6 (Aug. 1, 2007) (If the official is neither vested with "policymaking authority" nor acting pursuant to a superior policymaker, and instead is only implementing policies, plaintiff is unable to state a claim for *Monell* liability.). Authority to hire, fire, or impose discipline does not result in municipal liability if the decision maker is not in charge of establishing final employment policy. *Collins v. City of San Diego*, 841 F.2d 337, 341–42 (9th Cir. 1988); *Gillette v. Delmore*, 979 F.2d 1342, 1349–50 (9th Cir. 1992).

Here, nothing in the record shows that the City had an official or unofficial policy that violated plaintiff's First Amendment rights. *Christie*, 175 F.3d at 1235; *Connick*, 563 U.S. at 61. Additionally, none of the named defendants, aside from Chief Doney, possessed anything close to final decision-making authority. *Pembaur*, 475 U.S. at 483–84. Further, although defendant Chief Doney oversaw hiring and firing in the Department, he was not the final policy maker for the City's employment policies, and he was not the final decision maker for purposes of municipal liability. *Id.*; *see also Collins*, 841 F.2d at 341–42. Rather, Chief Doney implemented existing employment policy. Therefore, any alleged actions by the named defendants do not result in municipal liability. As such, plaintiff's *Monell* claim fails.

///

## IV. Qualified Immunity

Finally, the individual defendants are entitled to summary judgment on the ground of qualified immunity. Qualified immunity shields government agents from suit for damages if a reasonable official performing discretionary functions could have believed that his or her conduct was lawful in light of clearly established law and the information possessed by the official. *Anderson v. Creighton*, 483 U.S. 635, 637–39, 641 (1987); *Hunter v. Bryant*, 502 U.S. 224 (1991) (per curiam). This standard shields all government officials except those who are either plainly incompetent or knowingly violate the law. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Government employees are entitled to qualified immunity even if they make mistaken, but reasonable, judgments about open legal questions. *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). Because the analysis of whether speech is constitutionally protected turns on "a context-intensive, case-by-case balancing analysis, the law regarding such claims will rarely, if ever, be sufficiently 'clearly established' to preclude qualified immunity." *Dible v. City of Chandler*, 515 F.3d 918, 930 (9th Cir. 2007) (quoting *Moran v. Washington*, 147 F.3d 839, 847 (9th Cir. 1998)).

"Ordinarily, the courts employ the sequential analysis set forth in *Saucier v. Katz*, 533 U.S. 194 (2001), first determining whether the facts alleged by plaintiff, taken in the light most favorable to plaintiff, establish a constitutional violation; and, if a violation could be established under the facts alleged, then considering whether the right was clearly established." *Franklin v. Clarke*, 2011 WL 4024638 at *3 (D. Or. Sept. 9, 2011) (citing *id.* at 201). If no constitutional right would have been violated under the facts alleged, the analysis ends. *Saucier*, 533 U.S. at 201. "However, in *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), the Supreme Court receded from the mandated *Saucier* analysis, holding that, 'while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory'" and "instead, courts 'should be

permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Franklin*, 2011 WL 4024638 at *3 (quoting *Saucier*, 533 U.S. at 201).

In the circumstances of this case, the court will address the first prong of the *Saucier* inquiry: whether the facts alleged by plaintiff, taken in the light most favorable to plaintiff, establish a constitutional violation.

Here, as stated above, reporting police misconduct is clearly a matter of public concern. *Dahlia*, 735 F.3d at 1067. However, plaintiff has failed to show under the *Pickering* steps that her speech was constitutionally protected at the time of the alleged violation, *Pickering*, 391 U.S. at 568. Moreover, plaintiff also failed to show that the Agreement restrains speech protected by the First Amendment. Accordingly, the record, when construed in the light most favorable to plaintiff, does not reveal a constitutional violation. As such, pursuant to the *Saucier* framework, no additional inquiry into the issue of qualified immunity is necessary and this Court finds that defendants are entitled to qualified immunity on both of plaintiff's claims.

## CONCLUSION

For the reasons stated above, defendants' Motion for Summary Judgment (doc. 52) is GRANTED and plaintiff's second Motion for Partial Summary Judgment (doc. 50) is DENIED.

IT IS SO ORDERED.

DATED this 12th day of April 2017.

_____
ANN AIKEN
United States District Judge

17 – OPINION AND ORDER